UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:02CR3001 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER ON |
| | ) | DEFENDANT'S MOTION UNDER |
| FIDEL SOLORIO-TAFOLLA, | ) | 28 U.S.C. § 2255 |
| | ) | |
| Defendant. | ) | |

The defendant, Fidel Solorio-Tafolla, has filed a Motion for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255, (see filing 165), and supplemental § 2255 motion. (See filing 168). The defendant claims the following actions, or inactions, of his counsel, the court, and the government during his trial and sentencing violated his Fifth and Sixth Amendment rights.

(1)  Defendant's trial counsel did not request a Daubert hearing and did not object to opinion evidence presented at trial concerning drug trafficking; hypothetical drug transactions; secrecy in drug transactions; fingerprint evidence; the defendant's guilt; and whether he lied when questioned by investigating officers. (See filing 165 ¶¶ a, b, d, & e).

(2)  The court did not require a Daubert hearing before the government offered the opinion evidence referenced in the preceding paragraph 1; received this opinion evidence; and also received anecdotal and opinion evidence not relevant to the defendant's case and pertaining to wiretap evidence, the manufacture of methamphetamine, the economics of drug manufacturing, and the role of drug trafficking participants in general. (See filing 165 ¶¶ a, c, d, & e).

(3)  The government: a) offered opinion evidence concerning drug trafficking, and b) during its final rebuttal argument, implied to the jury that defendant had a duty to present any evidence he thought was missing, and argued the evidence was "unconroverted." (See filing 165 ¶¶ a & f).

(4)  The court enhanced defendant's sentence in violation of his constitutional rights s under Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Terrell, 2004 U. S. Dist. Lexis 1378 (D. Neb. July 22, 2004).[1]  (See filing 168).

---

[1] Docketed in this court as United States v. Terrell, Case No. 8:04CR00024, filing 23 (D. Ne. July 22, 2004)(J. Bataillon, presiding).

Upon review of the defendant's motions and the court's record, I conclude that the defendant's § 2255 motions should be denied.

## I. BACKGROUND

On January 3, 2002, a criminal complaint was filed against Fidel Solorio-Tafolla alleging that on December 27, 2001, he possessed with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and § 841(b)(1)(A), and 18 U.S.C. 2. (See filing 1).

On January 22, 2002, the defendant was indicted on two counts. Count I charged that between March 1, 2001 and December 27, 2001, the defendant conspired to distribute and possessed with intent to distribute five hundred grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and § 841(b)(1). Count II charged that on December 27, 2001, the defendant distributed and possessed with the intent to distribute five hundred grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and § 841(b)(1)(A), and 18 U.S.C. 2. (See filing 33).

The defendant's jury trial began on April 29, 2002. During the course of the four-day trial, Detective Sergeant Michael Garnett of the Lincoln, Nebraska Police Department testified concerning his personal investigation of this case and offered opinion testimony on a number of topics related to drug-related crimes and investigating those crimes. Before providing his opinions, Detective Garnett testified that he has been a police officer for twenty-eight years, and a narcotics officer for twenty of those years. He explained his formal and on-the-job training, and his extensive local and inter-agency experience in the area of narcotics, undercover, and complex drug crime investigations. He testified that he supervises other officers performing such drug crime investigations and has testified as an expert witness on the topic of illegal drug activity and criminal investigation on multiple occasions in both state and federal court. (See filings 114B (trial transcript, Vol II) at 310-316; 114C (trial transcript, Vol III) at 341-342).

Detective Garnett offered opinion testimony concerning the methods commonly used by drug traffickers including the level of secrecy employed, the role of participants, the distribution and sale of illegal drugs, and the process used for manufacturing, "cutting," and packaging

methamphetamine.  (See filings 114B (trial transcript , Vol II) at 328-31; 114C (trial transcript , Vol III) at 342-346, 349-360, 411-13).  Since the defendant was arguing that law enforcement had failed to perform a thorough investigation of defendant's alleged criminal activity, (see filing 114C (trial transcript, Vol III) at 340, 373-74, 379, 383-84, 386-87, 391-93, 395-99, 401), Detective Garnett also offered opinions as to why some types of investigation techniques, including wiretapping telephones and securing fingerprints, were not available or performed during the  investigation of the criminal charges brought against the defendant.  (See filings 114B (trial transcript , Vol II) at 332-33; 114C (trial transcript , Vol III) at 338-340, 346-349, 370, 409-411, 414, 432).  No opinions were solicited or offered concerning the defendant's guilt or whether he provided truthful answers when questioned by investigating officers.  Defendant's counsel raised several relevancy and foundation objections to Detective Garnett's opinion testimony, (see filing 114C (trial transcript , Vol III) at 339, 342, 360, 361, 364-65, 366, 424), but did not challenge the officer's competency or qualifications to testify.

In his closing statement, defendant's counsel argued that the government had failed to present a valid case against the defendant.  He argued that the only witnesses against the defendant were "bought and paid for" with plea bargains, (filing 125 (closing argument transcript, Vol V) at 755-56, 758-59), the police investigation was incompetently performed because the officers did not investigate the defendant's trash, retrieve fingerprints, or secure any search warrants, and the case was poorly presented by prosecutors in that they failed to introduce testimony from neighbors or independent witnesses, and failed to submit into evidence the denim jacket allegedly worn by a co-defendant or cell phones which record phone numbers of calls made or received to carry out the alleged drug transactions.  (See filing 125 (closing argument transcript, Vol V) at 762, 768-772).  Defendant's counsel argued that the government, not the defendant, had a duty to present evidence, and by failing to do so, the government had failed to prove its case beyond a reasonable doubt.  (See filing 125 (closing argument transcript, Vol V) at 764-65).

In rebuttal, the government argued:

> Now, Mr. Gallup has made a lot of statements about what wasn't here. We have to prove our case beyond a reasonable doubt. But that doesn't mean the defendant is not able to subpoena police officers if he believes they have the evidence or they have the jacket. It does not mean the defendant cannot put in a cell phone to show that there wasn't a call that was made. Mr. Gallup chose to argue those things to you. I respond that he had the opportunity to present that if he wanted to. But again, the government is the one that has the burden in this case.
>
> . . .
>
> And what the evidence shows is that it is uncontroverted.

(See filing 125 (closing argument transcript, Vol V) at 785-86).

Defendant's counsel promptly objected during this portion to the government's rebuttal and moved for a mistrial. Defendant's counsel argued that by stating the evidence was uncontroverted, the government had impermissibly commented "on the failure of the defendant to take the stand since he's the only one that could have controverted these facts," which was a direct implication and comment on the defendant's right to remain silent. (Filing 125 (closing argument transcript, Vol V) at 786). The court denied the objection and refused to declare a mistrial. (Filing 125 (closing argument transcript, Vol V) at 786-87).

On May 3, 2002, the jury found the defendant guilty on Count I as indicted, and as to Count II, found the defendant guilty of possessing with the intent to distribute less than five hundred but more than fifty grams of methamphetamine. (See filing 85). The defendant moved for a new trial or an acquittal, claiming the government's rebuttal argument necessitated a mistrial, and the court had improperly limited the defendant's ability to cross-examine witnesses through the use of prior inconsistent statements. The motion for new trial was denied. (See filings 87 & 106).

The defendant was sentenced on August 13, 2002. At the sentencing hearing, evidence was offered concerning the quantity of drugs distributed by the defendant and his alleged attempts to intimidate a testifying witness. I found that the defendant was responsible for distributing fifteen kilograms or more of methamphetamine and therefore his base offense level for sentencing was 38. I also concluded the defendant had threatened a witness and a two-level enhancement for obstruction of justice was warranted. The defendant's total offense level was

4:02-cr-03001-RGK Doc # 175 Filed: 06/21/05 Page 5 of 15 - Page ID # 206

40, which corresponded with a guideline sentencing range of 292 to 365 months. Noting that the guidelines required a "long, long, hard, harsh" sentence, I imposed a 292-month sentence of incarceration, the minimum allowed under the guidelines. (Filing 131 (sentencing transcript) at 53-61).

The defendant timely appealed his sentence. On appeal, he argued that Detective Garnett's opinion testimony regarding drug trafficking was improperly received as evidence without a prior Daubert hearing and in violation of the Daubert standard for expert testimony. The Eighth Circuit reiterated that trial courts are not required to hold a Daubert hearing prior to receiving expert witness testimony at trial, and qualified law enforcement officers may testify as experts concerning the methods used to commit drug-related crimes to the extent such testimony explains matters beyond the common understanding of lay persons. The Eighth Circuit noted that defendant's counsel did not object to Detective Garnett's competency as an expert, and after evaluating Detective Garnett's testimony concerning his background and experience, concluded "the district court did not plainly err in admitting the expert testimony, because, on balance, the probative value of the expert testimony was not substantially outweighed by any possible unfair prejudice." United States v. Solorio-Tafolla, 324 F.3d 964, 966 (8th Cir. 2003). The defendant's conviction and sentence were affirmed by the Eighth Circuit on April 3, 2003. The defendant did not file a Petition for Writ of Certiorari. Defendant motion for post-conviction relief was timely filed on May 18, 2004.

## II. STANDARD OF REVIEW

A motion to vacate, set aside, or correct a sentence may be based upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise

-5-

> constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996). An evidentiary hearing need not be held if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. See also Kingsberry v. United States, 202 F.3d 1030, 1033 (8th Cir. 2001)(affirming denial of § 2255 motion without an evidentiary hearing where defendant claimed his counsel provided erroneous plea advice).

### III. LEGAL ANALYSIS

Solorio-Tafolla's § 2255 motions claim his counsel provided ineffective assistance at trial by failing to object to expert testimony offered by Detective Garnett and failing to request a Daubert hearing before this opinion evidence was offered. He claims the government violated his constitutional rights at trial by offering Detective Garnett's opinion testimony and commenting on the defendant's failure to testify during its rebuttal closing argument. He claims the court committed error at trial by not requiring a prior Daubert hearing and receiving Detective Garnett's opinion testimony, and by deciding issues of fact which determined and enhanced the defendant's sentence.

A § 2255 motion is not a substitute for direct appeal. Poor Thunder v. United States, 810 F.2d 817, 823 (8th Cir. 1987). A claim that could have been presented on direct appeal will not be considered in a § 2255 proceeding absent a showing of cause for the failure to raise the issue and actual prejudice resulting from that failure. United States v. Moss, 252 F.3d 993, 1001 (8th Cir. 2001); Reid v. United States, 976 F.2d 446, 447-48 (8th Cir. 1992). Specifically, defendant must show that some objective factor external to the defense prevented him from raising his defaulted claims. Murray v. Carrier, 477 U.S. 478, 488 (1986).

The defendant could have appealed his claim that the government's rebuttal argument violated his Fifth Amendment right to remain silent. He filed a motion for new trial or to obtain an acquittal on that basis, but he never raised the issue on appeal. The defendant has made no showing of cause for failing to raise the issue on appeal.

Moreover, the defendant cannot show prejudice arising from the government's argument, the court's refusal to order a mistrial, or his appellate counsel's failure to raise the issue on appeal. The defendant's closing statement implied that the government was withholding evidence and thereby failed to meet its burden of proof because it did not introduce a co-defendant's jacket and cell phone into evidence; the government responded by commenting that if the defendant believed this evidence was relevant, he could have presented it at trial. The government did not comment on the defendant's failure to testify but rather his failure to present physical evidence if he believed such evidence would exonerate him. The Fifth Amendment prohibits only compelled "testimonial" evidence, and the jacket and cell phone evidence were not testimonial in nature. United States v. Davis, 367 F.3d 787, 790 (8th Cir. 2004).

The defendant failed to appeal his issue of alleged prosecutorial misconduct during the rebuttal closing statement and, absent a showing of cause and prejudice, cannot raise these issues in a § 2255 motion. Even interpreting his motions liberally to include a claim of ineffective assistance of counsel on appeal, the defendant cannot show prejudice. He cannot show a reasonable probability that he would have prevailed on appeal had the government's alleged misconduct been raised. Strickland v. Washington, 466 U.S. 668, 694 (1984); Bryson v. U.S., 268 F.3d 560 (8th Cir. 2001). The Eighth Circuit has ruled on this specific issue and has held that such rebuttal arguments do not violate a defendant's Fifth Amendment rights. Davis, 367 F.3d at 790 (where issue arose concerning what the defendant was wearing during the alleged crime, the defendant's argument implied the government should have produced the evidence, and the government suggested the defense should have produced the evidence, the government's response was not an impermissible comment of defendant's failure to testify).

The defendant also requests post-conviction relief by claiming the court improperly admitted opinion testimony from Detective Garnett concerning various aspects of drug trafficking and drug-related criminal investigation, and because the court failed to perform a Daubert hearing before permitting this testimony. The Eighth Circuit has already reviewed these issues on defendant's direct appeal and, applying a plain error standard, concluded they provide no basis for reversal of the defendant's conviction. United States v. Solorio-Tafolla, 324 F.3d 964, 966 (8th Cir. 2003). The defendant's § 2255 motion, which attempts to relitigate this

holding, cannot be used as a vehicle to circumvent a decision previously made by an appellate court on direct appeal. Bear Stops v. United States, 339 F.3d 777, 780 (8th Cir. 2003); United States v. Wiley, 245 F.3d 750 (8th Cir. 2001); Dall v. United States, 957 F.2d 571, 573 (8th Cir. 1992); United States v. Holtzen, 718 F.2d 876, 878 (8th Cir. 1983). The defendant's claim for post-conviction relief based on the court's alleged error in not conducting a Daubert hearing and admitting expert opinion testimony at defendant's trial must be denied.

The question of whether Detective Garnett was qualified to testify as an expert was reviewed by the Eighth Circuit on a plain error standard because defendant's counsel failed to raise any competency objections at trial. The defendant claims his counsel was constitutionally ineffective in failing to raise such objections at the trial level, and in failing to request a pre-trial Daubert hearing to exclude Detective Garnett's opinion testimony.

A claim of ineffective assistance of counsel is reviewed under the two-pronged standard of Strickland v. Washington, 466 U.S. 668, 694 (1984). The defendant must demonstrate that counsel's performance was deficient, and that such deficient performance prejudiced his defense. Id. at 687; Bryson v. United States, 268 F.3d 560 (8th Cir. 2001); Williamson v. Jones, 936 F.2d 1000, 1004 (8th Cir. 1991). The first prong requires showing that defendant's attorney failed to provide reasonably effective assistance. Strickland, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The second prong requires the defendant to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Hubbeling v. United States, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996)(quoting Cheek v. United States, 858 F.2d 1330, 1336 (8th Cir. 1988)).

The defendant claims his counsel's failure to request a pre-trial Daubert hearing is a basis for proving ineffective assistance of counsel. In Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), the Supreme Court held that the district court must serve as a gatekeeper to assure that expert opinions presented at trial could assist the jury and have a valid basis. In exercising

the gatekeeping function, a district court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is supported by "appropriate validation--i.e., 'good grounds,' based on what is known." Id. at 590. The district court's gatekeeping role separates expert opinion evidence based on "good grounds" from subjective speculation masquerading as an expert opinion. Glastetter v. Novartis Pharmaceuticals Corp., 252 F.3d 986, 988 -989 (8th Cir. 2001)

Expert testimony explaining the methods used by drug traffickers, and the procedures used by law enforcement to investigate such crimes, can assist the jury in evaluating and considering the evidence offered during trials of drug-related crimes. United States v. Robertson, 387 F.3d 702, 704 (8th Cir. 2004)(expert opinions related to drug trafficking methods assist the jury); United States v. Santana, 150 F.3d 860, 863 (8th Cir. 1998)(expert opinions related to fingerprinting procedures assist the jury).

> In a drug distribution conspiracy trial, . . . a jury is presented with voluminous
> facts connecting the defendants and their alleged "conspiracy-related" activities.
> To understand these connections and their relationship, it is "helpful" for the jury
> to understand how drug distribution rings are organized and how the various
> associations between the members are initiated and maintained.

United States v. Johnson, 28 F.3d 1487, 1497 n. 10 (8th Cir. 1994). "The business of drug trafficking and the modus operandi of drug dealers are matters unfamiliar to jurors. As such, Rule 702 of the Federal Rules of Evidence permits a district court to allow the testimony of a witness whose knowledge, skill, training, experience or education will assist a trier of fact in understanding the business of drug trafficking." United States v. Robertson, 387 F.3d 702, 704 (8th Cir. 2004)(internal citations omitted).

Law enforcement officers with training and experience in drug-related crime investigations can be expert witnesses and provide useful expert testimony for jury consideration. Robertson, 387 F.3d at 704; United States v. Delpit, 94 F.3d 1134 (8th Cir. 1996). In Robertson, the defendant appealed trial court rulings which permitted two detectives to provide expert testimony in the area of drug trafficking. Robertson claimed the detectives' lack of expertise rendered their testimony inherently unreliable and inadmissible at trial, but the Eighth Circuit rejected these arguments.

The facts and reasoning of Robertson are instructive in this case. The detectives in Robertson were officers with the St. Louis Metropolitan Police Department. One detective was a ten-year veteran of the department who had attended Drug Enforcement Agency (DEA) training; investigated the local narcotics trade by interviewing addicts, defendants, and informants; arrested over fifty individuals for state and federal drug and firearm offenses over a two-year period; and had testified in court many times regarding the seizure of controlled substances. The second detective was a thirteen-year veteran of the department who also attended DEA training and had focused for the last three years on narcotics investigations, including performing narcotics-related arrests and interviews. Citing Daubert, Robertson reiterated that "[w]hen deciding whether to admit expert testimony under Rule 702, the district court plays a gatekeeping role allowing in testimony only if it is both relevant and reliable." Robertson, 387 F.3d at 704. The trial court's determination is reviewed under an abuse of discretion standard. Id. Although the district court in Robertson did not hold a Daubert hearing before admitting the detectives' testimony, "the district court is not always required to hold such a hearing prior to qualifying an expert under Rule 702 of the Federal Rules of Evidence." Robertson, 387 F.3d at 704 n. 2 (citing Solorio-Tafolla, 324 F.3d at 965). After reviewing the testimony and qualifications of the detectives, Robertson held that the district court properly performed its gatekeeping role and did not abuse its discretion by permitting the detectives to testify as experts on drug trafficking methods. Their expert testimony was reliable, relevant, and helpful to the jury is assessing the evidence at trial. Robertson, 387 F.3d at 705. See also United States v. Molina, 172 F.3d 1048, 1056 (8th Cir. 1999)(police captain's detailed testimony as to how drug dealers routinely conduct their drug transactions with a partner was admissible expert testimony and relevant to prove the defendant was not an innocent bystander); Santana, 150 F.3d at 863 (8th Cir. 1998)( officer with twenty-six years of law enforcement experience, including extensive experience in drug-related investigations, was qualified him to testify regarding how common it was for the crime lab to recover adequate fingerprints from plastic bags).

Applying a plain error standard, the Eighth Circuit has already reviewed and upheld the admissibility of Detective Garnett's expert opinions received during the defendant's trial. Therefore, the defendant's claim of ineffective assistance of counsel at trial raises, in essence, a

-10-

claim that had counsel objected at trial or during a Daubert hearing by arguing Detective Garnett was not qualified to testify or that his expert testimony was of no assistance to the jury, the opinions of Detective Garnett would have been either excluded at trial or deemed inadmissible on appeal under an abuse of discretion standard of review.

Detective Garnett's trial testimony began with describing his qualifications and background in drug crime investigations. I was thereby afforded an opportunity to assess this detective's qualifications and the basis for his opinions before any opinions were solicited and without conducting a separate Daubert hearing. Such a hearing was not required to perform my gatekeeping role, and even had it been conducted, the result would have been the same. Applying the standards in Robertson, and comparing the facts of that case to Detective Garnett's background and experience, there is no merit to defendant's claim that Detective Garnett was unqualified to provide expert testimony on the areas of drug trafficking and drug crime investigation. There is also no merit to any claim that had the Eighth Circuit reviewed Detective Garnett's testimony on direct appeal under an abuse of discretion standard, the standard applied in Robertson, the testimony would have been deemed unreliable and inadmissible, and the defendant's conviction reversed.

Detective Garnett has extensive education and experience in drug-related crime investigations–perhaps even exceeding that discussed in Robertson. His opinions assisted the jury in understanding the relevance of the evidence gathered by the police, the types of evidence reasonably attainable in such investigations, and whether, as the defendant argued, evidence which may have exonerated the defendant was not secured due to incompetent police investigation. Based on this trial record, the defendant cannot demonstrate a reasonable probability that but for counsel's failure to request a Daubert hearing or raise such objections at trial, the result of his trial or appeal would have been different. The defendant cannot show any prejudice arising from his counsel's alleged constitutionally ineffective representation. His § 2255 claim of ineffective assistance of counsel must therefore be denied. Bruns v. Thalacker, 973 F.2d 625, 629 (8th Cir. 1992)(alleged ineffective assistance of counsel for failing to file adequate pre-trial motions, object to evidence at trial, or adequately cross-examine witnesses could not be basis post-conviction relief absent showing of actual prejudice).

The defendant's supplemental § 2255 motion raises a claim for relief under <u>Blakely v. Washington</u>, 124 S.Ct. 2531 (2004).   Relying on its reasoning in <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Court in <u>Blakely</u> held that imposing a sentence enhancement above the State of Washington's Sentencing Reform Act based solely on the factual findings of the sentencing judge violated the defendant's Sixth Amendment rights.  After the defendant filed his supplemental § 2255  motion, the Supreme Court, in <u>United States  v. Booker</u>, 125 S.Ct. 738, 756 (2005), addressed the constitutionality of the federal sentencing guidelines.  <u>Booker</u> relied on both <u>Apprendi</u> and <u>Blakely</u> and held that the mandatory application of the federal sentencing guidelines violates the Sixth Amendment where sentences are enhanced based upon factual findings neither admitted by the defendant nor found by a jury to be true beyond a reasonable doubt.  See also <u>United States v. Terrell</u>, 2004 U. S. Dist. Lexis 1378 (D. Neb. July 22, 2004).

Solorio-Tafolla's sentence was based on the court's determination as to the quantity of drugs distributed by the defendant, and the sentence calculation included a two-level enhancement for obstruction of justice.  This sentence enhancement was based on factual findings made by the court during the sentencing hearing.  The defendant claims that under <u>Blakely</u> (and <u>Booker</u>) this sentence must be vacated because a jury did not determine the drug quantity at issue or the facts essential to an obstruction of justice sentence enhancement.

The question presented by the defendant's supplemental § 2255 motion is whether <u>Blakely</u> and <u>Booker</u> decisions are applicable to this defendant's motion to vacate his sentence. Determining whether a constitutional rule for criminal cases applies to a case on collateral review involves a three-step process.  <u>Beard v. Banks</u>, 124 S.Ct. 2504, 2510 (2004).  The court must first determine when the defendant's conviction became final.  It must then ascertain the legal landscape that existed at that time the conviction became final and determine whether the Constitution, as interpreted by the precedent then existing, compelled the result the defendant is raising or whether a "new rule" has been adopted.  If the rule is new, the court must determine whether it should be retroactively applied.  <u>Banks</u>, 124 S.Ct.at 2510.  New constitutional rules of criminal procedure are generally not applied retroactively to cases on collateral review.  <u>Teague v. Lane,</u> 489 U.S. 288, 310 (1989).

Federal convictions are final when the Supreme Court affirms a conviction on the merits on direct review, or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires. Clay v. United States, 537 U.S. 522, 527 (2003). See also Banks, 124 S.Ct. at 2510. In this case, the defendant's conviction and sentence were affirmed by the Eighth Circuit on April 3, 2003, (United States v. Solorio-Tafolla, 324 F.3d 964, 966 (8th Cir. 2003)), and no petition for writ of certiorari was filed. For the purposes of reviewing defendant's motion for post-conviction relief, the defendant's conviction became final on July 1, 2003, ninety days after the Eighth Circuit affirmed his conviction and sentence. The defendant's conviction and sentence were therefore final before the Supreme Court issued the Blakely opinion in 2004 and the Booker opinion in 2005.

Prior to the Court's Blakely and Booker decisions, a sentencing judge could enhance a sentence based on facts not admitted by the defendant or found by the jury, so long as the enhancement did not increase the defendant's sentence beyond the prescribed statutory maximum. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000); United States v. Miller, 295 F.3d 824, 827 (8th Cir. 2002))("Apprendi applies only if the defendant is sentenced beyond the statutory maximum."). Before Blakely, "every federal court of appeals had held that Apprendi did not apply to guideline calculations made within the statutory maximum." Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004)(collecting cases). Booker held that the federal mandatory scheme of the sentencing guidelines, which provides for sentence enhancements based on facts found by the court, violated the Sixth Amendment. Booker remedied this constitutional violation by severing and excising the statutory provisions that mandate sentencing and appellate review under the guidelines, thus making the guidelines advisory.

Although based on Apprendi, Blakely and Booker created new rules for criminal sentencing. Blakely and Booker broke "new ground" by announcing rules that were not "dictated by precedent existing at the time the defendant's conviction became final."[2] Teague, 489 U.S. at 301. Precedent "dictates" the result in a subsequent case where that result would be "'apparent to all reasonable jurists.' " Banks, 124 S.Ct. at 2511 (quoting Lambrix v. Singletary, 520 U.S. 518,

---

[2] Since the defendant's conviction was final before either Blakely or Booker was decided, I need not decide whether Blakely or Booker, or both created new rules.

-13-

528 (1997)).  Many reasonable jurists have agreed that the result in Booker and Blakely was not dictated by Apprendi.  See Guzman v. United States, 404 F.3d 139, 142 (2d Cir. 2005)(Booker "was not dictated by Apprendi or, for that matter, the Court's later decision in Blakely. . ."); Lloyd v. United States,  407 F.3d 608, 613 (3d Cir. 2005)(the Booker rule is a new rule of criminal procedure for purposes of Teague); Humphress v. United States, 398 F.3d 855, 861 (6th Cir. 2005)(the Booker rule "was not dictated by precedent"); United States v. Price, 400 F.3d 844, 848-49 (10th Cir. 2005)(while Blakely interpreted Apprendi, it was not compelled by Apprendi).

Generally, a new constitutional rule will not be retroactively applied to criminal cases which have become final before the new rule is announced..  Teague, 489 U.S. at 290. However, Teague's bar on retroactive application of new rules has two exceptions.  The first exception addresses "substantive rules." New substantive rules are generally applied retroactively and include "decisions that narrow the scope of a criminal statute by interpreting its terms," and "constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish. . . ." Schriro v. Summerlin, 124 S.Ct. 2519, 2522 (2004)(citing Bousley v. United States, 523 U.S. 614, 620-621 (1998); Saffle v. Parks, 494 U.S. 484, 494- 495 (1990); Teague,  489 U.S. at 311.  Substantive rules are retroactively applied because they pose a significant risk that a defendant has been convicted of conduct that the law does not make criminal or faces a punishment that the law cannot impose. Id.  This exception does not apply to this defendant's case.

The second exception addresses "procedural rules."  Procedural rules "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise."   Schriro, 124 S.Ct. at 2523. "'[W]atershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding" may be retroactively applied; all other new procedural rules are not applied retroactively.  Schriro, 124 S.Ct. at 2523 (quoting Saffle, 494 U.S. at  495)(quoting Teague,  489 U.S. at 311)).

The analysis in Schriro addressed whether the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 603- 609 (2002), announced a new procedural or substantive rule in the context of a Sixth Amendment challenge to a defendant's sentencing.  Applying Apprendi, Ring

-14-

held that the Sixth Amendment requires a jury determination of any aggravating circumstance necessary for imposing the death penalty–a sentencing judge, sitting without a jury, may not make such findings.  Schriro held that the Ring decision was properly classified as procedural because it "rested entirely on the Sixth Amendment's jury-trial guarantee, a provision that has nothing to do with the range of conduct a State may criminalize,"and served the procedural function of "allocat[ing] decisionmaking authority." Schriro, 124 S.Ct. at 2523.  Ring was therefore a new constitutional rule which was not retroactively applicable to cases on collateral review.

Similar to the constitutional rule announced in Ring, the constitutional rule announced in Booker and Blakely is based on the Sixth Amendment right to a jury trial, allocates decisionmaking authority at sentencing, and is a "prototypical procedural rule." Schriro, 124 S.Ct.at 2523.  Based on Schriro, and the reasoning of every circuit court that has addressed the issue to date, (see Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005); Guzman v. United States, 404 F.3d 139 (2d Cir. 2005); Lloyd v. United States, 407 F.3d 608, 611 (3d Cir. 2005); Humphress v. United States, 398 F.3d 855, 860 (6th Cir. 2005); McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005); United States v. Price, 400 F.3d 844, 845 (10th Cir. 2005); Varela v. United States, 400 F.3d 864 (11th Cir. 2005)), I conclude that Blakely and Booker announce new rules that cannot be retroactively applied to this defendant's § 2255 motion. "Booker does not apply retroactively to criminal cases that became final before its release on January 12, 2005."  McReynolds, 397 F.3d at 481.

I therefore conclude that the defendant's motions for § 2255 relief must be denied.

**IT IS ORDERED**:

1. Defendant's Motion for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255, filing 165, and supplemental Motion for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255, filing 168, are denied.

Dated June 21, 2005.

                BY THE COURT

                s/ Warren K. Urbom
                United States Senior District Judge